1
2
3
4
5
6
7
8
UNITED STATES DISTRICT COURT
9
CENTRAL DISTRICT OF CALIFORNIA
10
11
12
13
14
15
16
17
18

| | |
|---|---|
| MICHAEL EDWARD MACHUNIS, | Case No. ED CV 15-1349-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

19
**I.**
20
**INTRODUCTION**
21
On July 7, 2015, plaintiff Michael Machunis filed a complaint against

22
defendant, the Commissioner of the Social Security Administration

23
("Commissioner"), seeking review of a denial of a period of disability and

24
disability insurance benefits ("DIB"). Both plaintiff and defendant have consented

25
to proceed for all purposes before the assigned Magistrate Judge pursuant to 28

26
U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral

27
argument.

28

Plaintiff presents one issues for decision, whether the Administrative Law Judge ("ALJ") properly considered plaintiff's credibility.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-9; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-7.

Having carefully studied the parties' papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ failed to provide sufficient clear and convincing reasons for discounting plaintiff's credibility.  Consequently, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty years old on his alleged disability onset date, completed high school.  AR at 35, 54, 155.  His past relevant work was as a diesel mechanic.  *Id.* at 46, 155, 161, 209.

On May 29, 2012 plaintiff filed an application for a period of disability and DIB, alleging an onset date of October 5, 2011, due to spinal degenerative disc disease, artificial cervical disc implant between C5-C6, and thoracic problems.  *Id.* at 54, 65, 133-36, 154.  The Commissioner denied plaintiff's application initially and upon reconsideration, after which plaintiff filed a request for a hearing.  *Id.* at 54-91.

On December 11, 2013, plaintiff, represented by an attorney, appeared and testified at a hearing before the ALJ.  *Id.* at 32-45, 51.  The ALJ also heard testimony from a vocational expert.  *Id.* at 45-53.  On January 2, 2014, the ALJ denied plaintiff's claim for benefits.  *Id.* at 15-25.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity

1  since October 5, 2011, the alleged onset date. *Id.* at 17.

2      At step two, the ALJ found plaintiff suffered from the following severe

3  impairments: degenerative disc disease of the thoracic spine, lumbar spine, and

4  cervical spine, post laminectomy syndrome, status-post surgery in September

5  2009; obesity; bilateral sensorineural hearing loss with binaural amplification; and

6  radiculopathy of the upper extremities. *Id.*

7      At step three, the ALJ found plaintiff's impairments, whether individually or

8  in combination, did not meet or medically equal one of the listed impairments set

9  forth in 20 C.F.R. part 404, Subpart P, Appendix 1 ("Listing"). *Id.* at 18.

10      The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and

11  determined plaintiff had the RFC to perform light work, with the limitations that he

12  could: stand or walk for six hours out of an eight-hour workday, but for no more

13  than 10-15 minutes at a time; sit for six hours out of an eight-hour workday, but

14  with brief position changes after approximately 30-45 minutes; and occasionally

15  perform all postural activities except no climbing ladders, ropes, or scaffolds.  The

16  ALJ additionally determined plaintiff should perform no work at unprotected

17  heights, around moving machinery, or other hazzards; perform no jobs requiring

18  hypervigilance or intense concentration on a particular task; avoid concentrated

19  exposure to vibration, walking on uneven terrain, and extreme cold; perform no

20  repetitive or constant movement of the head or neck from side to side or up and

21  down; avoid concentrated exposure to loud noises; and perform no repetitive or

22  constant fine or gross manipulation bilaterally. *Id.*

23

24

25      [1]   Residual functional capacity is what a claimant can do despite existing
exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-
26  56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation,
the ALJ must proceed to an intermediate step in which the ALJ assesses the
27  claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151
n.2 (9th Cir. 2007).

28

1       The ALJ found, at step four, that plaintiff was incapable of performing his

2   past relevant work as a diesel mechanic.  *Id*. at 23.

3       At step five, the ALJ found there were jobs that existed in significant

4   numbers in the national economy that plaintiff could perform, including bench

5   assembler, cashier II, and toy assembler.  *Id.* at 24-25.  Consequently, the ALJ

6   concluded that, for the relevant period, plaintiff did not suffer from a disability as

7   defined by the Social Security Act.  *Id*. at 25.

8       Plaintiff filed a timely request for review of the ALJ's decision, which was

9   denied by the Appeals Council.  *Id.* at 1-3, 11.  The ALJ's decision stands as the

10  final decision of the Commissioner.

11                          **III.**

12                **STANDARD OF REVIEW**

13      This court is empowered to review decisions by the Commissioner to deny

14  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

15  Administration must be upheld if they are free of legal error and supported by

16  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

17  (as amended).  But if the court determines that the ALJ's findings are based on

18  legal error or are not supported by substantial evidence in the record, the court may

19  reject the findings and set aside the decision to deny benefits.  *Aukland v.*

20  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

21  1144, 1147 (9th Cir. 2001).

22      "Substantial evidence is more than a mere scintilla, but less than a

23  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

24  "relevant evidence which a reasonable person might accept as adequate to support

25  a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

26  F.3d at 459.  To determine whether substantial evidence supports the ALJ's

27  finding, the reviewing court must review the administrative record as a whole,

28

"weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff contends the ALJ failed to make a proper credibility determination.  P. Mem. at 2-9.  Specifically, plaintiff contends the ALJ failed to provide clear and convincing reasons for discounting plaintiff's credibility.

An ALJ must make specific credibility findings, supported by the record.  Social Security Ruling ("SSR") 96-7p.[2]  To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of

---

[2]   "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all components of the SSA.  SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

"[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). To permit a meaningful review of the ALJ's credibility determination, the ALJ must "specify which testimony [he] finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id.* The ALJ may consider several factors in weighing a claimant's credibility, including: ordinary techniques of credibility evaluation such as a claimant's reputation for lying; the failure to seek treatment or follow a prescribed course of treatment; and a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47. The ALJ may additionally consider "inconsistencies either in [claimant's] testimony or between his testimony and his conduct" and "testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

At the first step, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 20. At the second step, because he did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for finding plaintiff less credible. Here, the ALJ discounted plaintiff's credibility because: (1) "treatment and medication have been generally successful in controlling [his] symptoms"; (2) he "attempted to minimize his daily activities . . . which indicates an attempt by [plaintiff] to exaggerate the severity of his symptoms"; (3) plaintiff

6

received only "routine and conservative treatment since the alleged onset date,
and the "lack of more aggressive treatment" indicates limitations less severe than
those alleged; and (4) plaintiff's "allegations are greater than expected in light of
the objective evidence of record." *Id.* at 20; *see id.* at 19-23.

As an initial matter, contrary to plaintiff's contention (P. Mem. at 5), the
ALJ specified those portions of plaintiff's testimony that he found lacking in
credibility:

> The claimant alleged that he was unable to tolerate the pain. He
> indicates that his daily pain level even with medication is a level 7-9
> out of 10. . . . [¶] . . . The claimant alleged that he cannot sit longer
> than 30-45 minutes, he cannot walk longer than 30 minutes, and he
> can lift up to 25 pounds but with pain. He indicated that he can
> kneel but cannot stoop over and has a hard time reaching for things.
> The claimant testified that he has problems with his hands and arms
> trying to perform jobs because of neck and shoulder pain. The
> claimant alleged that reaching and bending cause severe muscle
> spasms and severe pain in his back and neck. He reported pain with
> turning to the left or right. The claimant testified that his pain
> interferes with focusing and concentrating. [¶] . . . [T]he claimant
> reported that he suffers from unusual fatigue which requires him to
> nap once a day for 1-3 hours.

*Id.* at 19.

## Adequate Control of Symptoms

The ALJ's first ground for discounting plaintiff's credibility was that
treatment and medications were successfully controlling his symptoms. *Id.* at 20.
Generally in evaluating a claimant's claimed symptoms, an ALJ may find a
plaintiff less credible when his or her symptoms can be controlled by medication.

1   *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); *see also Warre v.*
2   *Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be
3   controlled effectively with medication are not disabling for purposes of
4   determining eligibility for SSI benefits."); *Morgan v. Comm'r of Soc. Sec.*
5   *Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's adverse credibility
6   determination properly accounted for physician's report of improvement with
7   medication).  Here, the ALJ acknowledged plaintiff "has received various forms
8   of treatment and has been prescribed and has taken appropriate medications for
9   the allegedly disabling symptoms and impairments, which would normally weigh
10  somewhat in the [his] favor."  AR at 19-20.  Yet the ALJ found plaintiff's pre-
11  onset date back "surgery was generally successful," and the record reveals this
12  and other "treatments and medications have been generally successful in
13  controlling [plaintiff's] symptoms," thus "diminish[ing] the persuasiveness of
14  [plaintiff's] subjective complaints and alleged functional limitations."  *Id.* at 19-
15  20.  The evidence, however, does not support the ALJ's conclusion.
16        The record reflects that plaintiff was neurologically intact with a normal
17  range of motion (*id.* at 57-59, 342, 350, 368, 416, 457, 533-34, 546-47, 585-86,
18  725-26), he was not a candidate for additional surgery (*id.* at 224, 350-51, 360,
19  438, 534), and he experienced reduced pain on opiates.  *Id.* at 468 ("pain level
20  3/10 on opiates), 490 (reporting a pain level of 4/10), 543 (reporting his "pain is
21  adequately controlled. Tolerable well"), 634 (reporting a pain level of 5/10), 712
22  ("Current pain intensity: 6/10"), 721 (pain level today: 5/10 and 6/10 on the
23  Visual/Verbal Analog Scale).  But it also indicates plaintiff complained of high
24  pain levels – even after completing an integrated pain management program (*id.*
25  at 474, 719, 753), undergoing multiple steroid injections (*id.* at 345, 359, 487,
26  581, 665, 742), attempting several other recommended treatment methods (*id.* at
27  422, 523), and following his opiate prescriptions.  *Id.* at 188, 192, 293, 550, 755;
28

8

1  *see id.* at 359 ("trigger point injections did not seem to help"), 438 (reporting

2  "TENS, acupuncture, physical therapy and a chiropractor haven't helped"), 542

3  (complaining of a pain level of 7 out of 10 three weeks after injection), 598-99

4  (recording plaintiff's pain as 7/10 and setting a 3/10 pain level as part of

5  plaintiff's pain management goals), 753 (requesting prednisone from his

6  physician in August 2013, stating he has "been taking every med [he has] and on

7  time [but] pain not letting up" and that "the side effects can't be worse than what

8  [he is] living with").

9       Plaintiff's physicians consistently prescribed opiates to reduce plaintiff's

10  pain. *Id.* at 335, 354, 361, 366, 371, 378, 429, 462, 467, 482, 492, 515, 519, 547,

11  584, 587, 643, 726, 737, 748, 761, 786.  Several physicians attested to plaintiff's

12  severe and chronic pain. *Id.* at 412 (stating in April 2012 that plaintiff has

13  "chronic conditions that require continued pain management"), 792 (opining in

14  April 2013 that plaintiff, who has "limited use of upper body and on multiple

15  pain medications," is "totally medically disabled from his duties as a diesel

16  mechanic"), 793 (stating plaintiff "has chronic pain that renders him disabled"),

17  794 (certifying to the state Employment Development Department plaintiff

18  remains "off-work" in March 2013 due to chronic pain).  Although these

19  physicians' conclusions as to plaintiff's disability status are of little value for the

20  reasons stated by the ALJ (*see id.* at 22-23), they are still records of plaintiff's

21  chronic pain.

22       Because the evidence does not support the ALJ's determination that

23  plaintiff's pain symptoms were adequately controlled by his medication, this was

24  not a clear and convincing reason for the ALJ to discount plaintiff's credibility.

25  *See, e.g.*, *Lankford v. Astrue*, 2013 WL 416221, at *5 (N.D. Cal. Jan. 31, 2013)

26  (the ALJ's finding that a claimant's pain was controlled did not support his

27  credibility assessment because the ALJ failed to recognize that the medication did

28

9

not resolve the problem and claimant continued to complain of chronic pain).

**Minimizing Daily Activities**

The ALJ's second ground for an adverse credibility finding was that plaintiff "attempted to minimize his daily activities . . . which indicates an attempt by [plaintiff] to exaggerate the severity of his symptoms." AR at 20. The ALJ found "no evidence" that plaintiff could sit for no longer than 30-45 minutes and could not walk for longer than 30 minutes, and "no evidence" that plaintiff "suffers from unusual fatigue which requires him to nap once a day for 1-3 hours." *Id.*

Inconsistency between a claimant's daily activities and his alleged symptoms may be a clear and convincing reason for finding him less than fully credible. *See Tommasetti*, 533 F.3d at 1039. But that is not what the ALJ found here. Instead, the ALJ found plaintiff attempted to minimize his daily activities, presumably in his testimony or in his functional reports and questionnaires. But the problem is, the ALJ fails to identify or explain what daily activities she found plaintiff attempted to minimize; there are not even citations to the record from which the court might infer which daily activities she had in mind. The only daily activity mentioned is plaintiff's reported daily nap, and as to that, there is in fact at least some reference in the record to reported fatigue. *See* AR at 512.

This is not to say the court found no evidence in the record from which one might conclude plaintiff was exaggerating his symptoms. *See id.* at 312 (finding of facts by the unemployment benefits Office of Appeal determined plaintiff quit his previous job and was "planning to become a home inspector"), 358 (noting in January 2012 plaintiff exercised 50 minutes 4 days per week at a moderate or strenuous level), 575 (reporting in April 2013 treatment notes that plaintiff had no sitting limitation and walked 60+ minutes seven days per week), 648 (noting plaintiff exercised for sixty minutes at a moderate to strenuous level five days per

week in May 2013), 711 (indicating plaintiff "presented alone and on time" to an appointment to which "[h]e drove himself"), 712 (reporting plaintiff was "active and [did] remodel on his home, [drove] himself and [took] care of his activities of daily living"), 721 (recording plaintiff's "symptoms are worsened by physical activity" such as "washing the cars"). But the ALJ did not cite to any such evidence, or give any indication that such evidence played any role in her decision to discount plaintiff's credibility. As such, the court may not rely on such evidence to uphold the ALJ's decision. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." (citation omitted)).

The ALJ's finding that plaintiff was exaggerating because he attempted to minimize his daily activities was thus neither clear nor convincing.

### **Conservative Treatment**

The ALJ's third ground for an adverse credibility finding was that plaintiff had received only a conservative course of treatment. AR at 20. An ALJ may discount a plaintiff's subjective complaints based on the conservative treatment he received from his physicians. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment") (citation omitted); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (reasoning "conservative treatment" is indicative of "a lower level of both pain and functional limitation"); SSR 96-7p ("the [plaintiff]'s statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints").

But here, the record does not indicate plaintiff received only conservative treatment. On the contrary, as recounted at length above, it consistently involved opiate prescriptions and steroid injections. *See, e.g.*, AR at 350, 359, 486-87,

1   550, 665, 726-27.  Such treatment is typically not considered conservative.  *See*

2   *See Yang v. Colvin*, 2015 WL 248056, at *6 (C.D. Cal. Jan. 20, 2015) (collecting

3   cases finding spinal epidural injections are not conservative); *Aguilar v. Colvin*,

4   2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault

5   Plaintiff for overly conservative treatment when he has been prescribed strong

6   narcotic pain medications."); *Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D.

7   Cal. Sept. 16, 2011) (refusing to characterize treatment with narcotics, steroid

8   injections, trigger point injections, and epidural injections as conservative); *see*

9   *also Childress v. Colvin*, 2014 WL 4629593, at *12 (N.D.  Cal. Sept. 16, 2014)

10  ("[i]t is not obvious whether the consistent use of [a prescribed narcotic] is

11  'conservative' or in conflict with Plaintiff's pain testimony").  The ALJ's

12  characterization of plaintiff's treatment as conservative was therefore not clear

13  and convincing.

14          **Objective Medical Evidence**

15          The ALJ's fourth and final ground for an adverse credibility finding was

16  that plaintiff's "assertions are far in excess of the medical and other evidence of

17  record."  AR at 20.  Although a lack of objective medical evidence may be one

18  factor used to evaluate credibility, an ALJ "may not reject a claimant's subjective

19  complaints based solely on a lack of objective medical evidence to fully

20  corroborate the alleged severity of pain."   *Bunnell*, 947 F.2d at 345; *accord*

21  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

22          Here, lack of objective medical evidence was not the only ground given by

23  the ALJ for discounting plaintiff's credibility, but as discussed above, the other

24  reasons given were not clear and convincing.  As such, even if the ALJ properly

25  concluded the extent of plaintiff's complaints was not supported by the medical

26  evidence, it would not, standing alone, be sufficient to support the ALJ's decision

27  to discount plaintiff's credibility.  The ALJ therefore erred in finding plaintiff to

28

12

1   be not entirely credible.

2   **V.**

3   **REMAND IS APPROPRIATE**

4   The decision whether to remand for further proceedings or reverse and

5   award benefits is within the discretion of the district court. *McAllister v.*

6   *Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to

7   exercise this discretion to direct an immediate award of benefits where: "(1) the

8   record has been fully developed and further administrative proceedings would

9   serve no useful purpose; (2) the ALJ has failed to provide legally sufficient

10  reasons for rejecting evidence, whether claimant testimony or medical opinions;

11  and (3) if the improperly discredited evidence were credited as true, the ALJ

12  would be required to find the claimant disabled on remand." *Garrison v. Colvin*,

13  759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true

14  standard for remanding with instructions to calculate and award benefits).  But

15  where there are outstanding issues that must be resolved before a determination

16  can be made, or it is not clear from the record that the ALJ would be required to

17  find a plaintiff disabled if all the evidence were properly evaluated, remand for

18  further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-

19  96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In

20  addition, the court must "remand for further proceedings when, even though all

21  conditions of the credit-as-true rule are satisfied, an evaluation of the record as a

22  whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759

23  F.3d at 1021.

24  Here, remand is required because the ALJ erred in failing to properly

25  consider plaintiff's credibility and, due to the lack of clarity regarding at least one

26  of the reasons the ALJ gave, it is not clear from the record that the ALJ would be

27  required to find plaintiff disabled if plaintiff's credibility and statements were

28

1  properly considered.  On remand, the ALJ shall reconsider plaintiff's credibility

2  and testimony. The ALJ shall then reassess plaintiff's RFC and proceed through

3  steps four and five to determine what work, if any, plaintiff is capable of

4  performing.

5                                **VI.**

6                         **<u>RECOMMENDATION</u>**

7          IT IS THEREFORE ORDERED that Judgment shall be entered

8  REVERSING the decision of the Commissioner denying benefits, and

9  REMANDING the matter to the Commissioner for further administrative action

10 consistent with this decision.

11

12

13 DATED: September 29, 2016

14                              SHERI PYM
                                United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28